Here's Specialty Surfaces v. Continental Casualty next. You may proceed when you're ready. Good morning, my name is Timothy P. Law of Reed Smith. I represent the appellants, Specialty Surfaces International, Inc., doing business as Sprint Turf, Inc., and Empire & Associates. I will refer to them collectively as Sprint Turf. I would like to reserve three minutes for rebuttal. That's granted. Thank you. This action was brought by Sprint Turf against Continental Casualty Company, alleging that when Continental assumed the defense of a California action brought by the Shasta Union School District, a California school district in California, Continental failed to pay all of the defense costs owed for that action. In particular, Continental refused to pay any defense costs for the time period prior to when Continental agreed to assume the defense and refused to pay existing defense counsel his going rate, instead replacing him with counsel who would work for less. There are two issues on appeal. The first is an issue of choice of law, whether the district court erred in applying Pennsylvania law rather than California law to the dispute. The second issue is whether the district court erred in ruling as a matter of law that there was no occurrence, and thus that Continental owed no duty to defend the litigation in California initiated by the Shasta Union School District. How does the choice of law issue matter? Is it just the admissibility of that letter where the insurance company first said we'll defend? Well, the issue of choice of law can be dispositive in this case. Continental agrees, I think, that if California law applies, that the matter must be remanded for application of California law, and there are some key differences between California law and Pennsylvania law, both on the duty to defend and also on the occurrence issue. But how does it matter here? We're not just dealing with theory shifting cases back and forth up between the courts. I mean, we're deciding a real case, and so how does it matter here? Yes, Your Honor. Under California law, you can look at all of the facts at issue, not just the underlying complaint. So, for example, there was an amicus brief filed by the plaintiff in this action that explained a little bit more what its cause of action was about. Yeah, but an amicus brief isn't a fact of the case. What facts of the case are going to matter if we choose one state's law rather than the other? Well, the law between California and Pennsylvania is distinct, both on what's considered in the duty to defend and also about how the issue of occurrence is approached. The facts that matter, I think, primarily, are was there damage beyond the work product? And you can certainly interpret Pennsylvania law and California law being consistent in instances where there's damages beyond the work product. And I think the facts are undisputed here that there was damage beyond Sprint Turf's work product. So if you view California law and Pennsylvania law as being consistent on that point, that if there's damage beyond the work product of the insured, then you really don't need to reach the choice of law issue. You can just reach the second issue. You three times have asked the question, and you've given a very nice disposition, but I haven't heard a real difference. Is the occurrence versus incident question different in California? The occurrence issue is treated a little bit differently in California. There's the Getty's case out of the California Supreme Court that treats the incidence of a construction defect itself as an occurrence, whereas the Coverner case out of Pennsylvania treats a construction defect itself as not an occurrence. So you're saying the choice of law is key for that reason? Yes. If, in fact, there were not damage beyond the work product, or if you were to find that that doesn't matter, then the difference between California law and Pennsylvania law is key. If, however, you view California law and Pennsylvania law consistently on the question of what is an occurrence when there's damage beyond the work product itself, then there really doesn't make a difference. So ultimately, I think you can decide either one or other of the issues, and if you decide either one in our favor, that's enough to get us back to the district court for further proceedings. When you described what this case was about, you described your complaint as though it had asked for a declaration, declaratory judgment as to duty to defend. But your complaint is far broader than that. Your complaint asked for a declaratory judgment that these claims of the Shasta district are covered by the insurance policy. So the issue here is not duty to defend. The issue is coverage of the policy. Unless you think there can be a difference, you could have one law apply to duty to defend and another law apply to coverage? No. I disagree with the characterization of Sprint Turf's complaint, Your Honor. There's actually not a declaratory judgment count in there, I don't think. It's a breach of contract count. And at the point that we had brought our action, Continental had assumed the duty to defend in California. And the question was, did they owe defense costs going back in time after they assumed that defense? And were they able to replace counsel and not pay for the full cost of counsel upon assumption of the defense? They didn't raise a declaratory judgment count in counterclaim either, and they didn't assert occurrence as a defense. So the issue was not a typical insurance coverage duty to defend case or duty to indemnify case. It was really very strictly limited to these duty to defend issues, the nitty-gritty issues of duty to defend as applied in California with California counsel. And that's why the performance and the place of performance in this case is so closely tied to California and why we believe California law would apply to this action. The key issue here is not the meaning of occurrence in this policy? Well, that's certainly what the district court did with the case. I'm asking you for your position. At least 95% of the briefs are devoted to the issue of how California would decide and how Pennsylvania would decide how you interpret occurrence in this policy. Yes, Your Honor. So the issue is a coverage issue. Ultimately, Your Honor, that's what the case turned on in the district court. The case got away from the original complaint a little bit. You don't maintain that even though Pennsylvania law may cover the meaning of occurrence in this policy, that nevertheless California law would govern the duty to defend? No, Your Honor. I believe that in determining the duty to defend at the outset of a case, you would look to the law of the state where the duty to defend is to be performed. Now, the duty to indemnify cannot be decided until after you've reached a judgment. And in fact, in this case, there was no judgment. It was ultimately settled. And it was settled not based on the pleadings at issue in the case here. It was settled based on further amendments of the pleadings that aren't at issue in this case. So this case is very strictly focused on duty to defend issues, not on any issues of indemnity. Now, there are policy interpretation issues involved in determining whether there's a duty to defend. I certainly concede that. And certainly, Pennsylvania has an interest in insurance policies negotiated and delivered here. California, however, also has an interest in the duty to defend actions pending in California. And I think if this were a matter of first impression, it would be a very close case because those interests are so strong in both states. However, it's not an issue of first impression. And the Third Circuit has dealt with this issue before in American Contract Bridge League. And that's binding precedent on this panel. And the factors there... So how do we square them the Hammersmith case? It's just wrong? No, absolutely not. The Hammersmith case is distinct on place of performance. And that's the distinguishing factor. One other thing is, you know, I couldn't help but notice, and your adversary pointed this out, that initially your own briefs conceded that Pennsylvania law applied, and then apparently you guys changed your position. I mean, doesn't judicial estoppel apply? Well, the district court did not find judicial estoppel. Well, it didn't deal with it, right? What's that? It didn't deal with it either, did it? It did not. The district court did not deal with the judicial estoppel issue. And one result could be to remand for the district court to address the judicial estoppel issue. However, I think what happened here was there was an assumption that Pennsylvania law applied in the beginning of the case. And then as the case moved on, the court asked for briefing on choice of law. And when that issue was fully briefed, there were distinct positions taken with Continental urging Pennsylvania law and Sprint Turf urging California law, as well as the underlying plaintiff filing an amicus brief urging application of California law. So the distinction between the two cases, Hammersmith and American Contract-Bridge League, relates to place of performance. Hammersmith involved late notice. That was the only issue in the case. Much like in this case, the only issue relates to the defense of an underlying action. And the court there said the place of performance of the duty to defend is in, I'm sorry, the place of performance of providing notice and the insurance breach of a notice provision is where the notice is to be provided. And that's distinct here from the duty to defend issue with American Contract-Bridge League. The duty to defend is to be performed where the litigation is pending. The insurance company hires counsel and performs that duty here in California. But why would we, if the issue, if we're trying to decide the issue of what occurrence means in this policy, what does California have to do with that? You're telling us that Pennsylvania has a system where if you buy a liability insurance policy, you don't know what the coverage is. The coverage will depend on where the liability arises. If it's in Saudi Arabia, we're going to have to apply what Saudi Arabian judges would say occurrence means in this context. Is that what you think the Supreme Court of Pennsylvania would say? Well, I think the Pennsylvania Supreme Court would say it's a very flexible test, that we've abandoned lex loci contractus and lex loci delictus, and we're going to look to which jurisdiction has the most connection and interest to the issue being decided. And the issue decided here is the duty to defend. So as to the policy interpretation... I'm saying to you, isn't the issue what the expectations of the parties and understandings of the parties were when they entered this contract? You're agreeing that the result turns on the meaning of occurrence. Now, you're saying the conflict of law issue is different on duty to defend rather than the meaning of occurrence? Well, I think, Your Honor, the meaning of occurrence is at issue in this case only because the court said there was no duty to defend because, as a matter of law, there was no occurrence. The issue of occurrence is not raised in the pleadings at all. The issues raised in the pleadings solely relate to the duty to defend. Thank you. Thank you, counsel. May it please the Court. My name is Jay Morstein. I'm with my colleague, Ronald Schiller, of the firm of Hangley, Aranchick, Siegel, and Pudlin, representing Continental Casualty in this insurance coverage dispute. Does the complaint not ask for a declaratory judgment that there's coverage of Shasta's claim? I don't think it has a designated cause of action number, such and such, which is limited to declaratory relief. But when it gets to the payer... But that's the gist of their breach of warranty counts, their breach of contract counts, their negligence count in the Second Amendment complaint. The net effect would be a declaration because, as Mr. Law pointed out, the case was not over, so it was an ongoing case, and we'd have to deal first with, is there a duty to defend? And if so, down the road, is there a duty to indemnify? But, Judge Stapleton, I agree with your comment, and that is you never get to the duty to defend or the duty to indemnify unless you first have coverage under the definition of an occurrence and how that definition applies. Because you can even... Actually, you could... In this case, the trial court, Judge Fulham said, there was no occurrence. Therefore, there was no duty to defend, no duty to indemnify. But theoretically, you could even find an occurrence but then look through the policy and not find a duty to defend. So I think it's disingenuous when specialty services says, let's look at the duty to defend, and they just bypass occurrence. Indeed, if you look at their primary complaint or their reply brief, not primary complaint, primary brief, original brief, and their reply brief, you will never see the definition of occurrence. They never address it. But if we opt for California law, would that be decided differently, the question of occurrence? Occurrence, I think it would be, or there's a chance that it would be, that you could have an occurrence, but California law seems to be more liberal in terms of allowing there to be or recognizing an occurrence if there is damage to a third party's property. In other words, it doesn't require a degree of fortuity or accident. I think it still does, but they wind up finding fortuity, finding an accident if they find damage to a third party. And indeed, that's the gist of the South Carolina case, the Newman case that is relied on by the appellants, especially in their reply brief, where they criticize us for not taking that into account. But that's a perfect example of how two different courts can look at an occurrence. The Newman case in South Carolina, the Gambone case in Pennsylvania, both ironically involved defective stucco. Both, as a result of the defective stucco work, the faulty workmanship, led to flooding and damages and water seepage into the house, destroying non-defective components of the house. So can I go back to what Judge Lurie asked you? If we decide California law applies, then we have to vacate? I think you'd have to remand. Well, vacate and remand. Yeah, vacate and remand for further consideration. Okay. But to get back to what I was saying, South Carolina says that is an occurrence if you have defective workmanship on the stucco. Pennsylvania, in Gambone, says no, uh-uh. If you don't have an accident, if you don't have a fortuitous event, but you simply have faulty workmanship in the stucco, then you never get beyond the occurrence. You never get into the definition of property damage. You never get into the issues such as your work or your product exclusion and the exceptions to that exclusion for subcontractor work. The analysis ends when you make, if you make a determination that there is no occurrence, that there is no fortuitous event. And that's the key here is that the Third Circuit... Well, clearly there was a defect here. And then there was damage. Agreed. That was in the complaint. Sort of ironic to sort of weave through all of this and say, well, it wasn't an accident. Well, it is an ironic, Your Honor, that's what the Supreme Court of Pennsylvania in Cabrera is telling us, and that's what the Superior Court in Gambone is telling us, that we're not going to convert a general liability policy into a performance bond, into a warranty insurance type of document. We're not going to expand the scope of exposure to the insured to, in effect, insure the insured against faulty workmanship. Unless there's an accident. We're governed by Cabrera? Absolutely. Cabrera as extended by Gambone and as further extended by the CPB case. As well as the gist of the action doctrine, which we cite the Erie Insurance v. Abbott, where if you're not quite sure what analysis you apply, is it breach of contract or is it tort, you look to the nature of the cause of action. And if it arose out of a contractual arrangement between the parties, then the gist is a breach of contract. And you can label a separate count as negligence, but it's not going to overcome the basic tenet of Cabrera and Gambone that we're not going to cover pure and simple faulty workmanship unless we find a fortuitous accident. Whereas if it's a tort, if some third party has nothing to do with the contractual relationship between the parties at issue, then you apply a different standard, perhaps, because then you imply a cause of action created by law as a matter of social policy. We don't have that here. We have Shasta, which was one of the contracting parties, and the insured, specialty and empire, and there was a direct warranty going from the insureds, Sprinturf and Trading as such, directly going to Shasta, the school district, and it was the school district that had the damaged property. But for the, you know, even though the insured was a subcontractor to a general contractor, which in turn had a direct contract with Shasta, nevertheless, because of the warranties, there were direct contractual arrangements between the two. And that's the reason that under Cabrera and Gambone you're not going to protect the faulty workmanship by sticking that obligation on the insurer. There are other ways to go about it. And indeed, if you look at the attachments to the complaint and Second Amendment complaint, one of the attachments is the warranty that goes from Sprinturf, doesn't designate which of the entities, but just Sprinturf, to Shasta, and if you look at the bottom of the page, it refers to a warranty policy issued by Gramercy. That's one of the main points that Cabrera makes, and that is we're not going to open up a general liability policy to be an all-encompassing, all-insuring provision. There are other ways to protect the contracting parties. We're being told, however, that we're bound not to apply that law that you've just been talking about for the last five minutes because we are bound by American Contract Bridge. Are we not bound by American Contract Bridge? No, sir. Why not? American Contract Bridge, first of all, did not involve a casualty policy. It did not involve a casualty policy. It was a multi-peril policy, which was not defined in the opinion. We don't know the types of perils that were encompassed in American Bridge. We don't know what the dispute was. What was the Tennessee law versus the Pennsylvania law? Was there a true conflict? And this, I think, goes to Judge Lurie's earlier question. What is the difference? Well, there's no discussion of the difference there. There... By implication, though, they decided it, or they decided there was a conflict, or they wouldn't have gotten to the next step. And when they get to the next step, that gets to be a sticky wicket, doesn't it? This Court says there was a conflict, but then it went on to say, not only do the individual parties, the defendants in that case, think that Pennsylvania law should apply, but one of the two insurer defendants in the case said, yeah, we agree, we think Pennsylvania law should apply. But there's no discussion whatsoever as to why. What was the difference? There... We do know from the Court's opinion in American Bridge that there's absolutely no discussion of Section 193 and 188-2 of the restatement. We're ready to disagree if the holding is applicable here, right? If the holding is applicable, and you don't know whether the holding is applicable, because it did deal with a different type of policy. There was absolutely no discussion of the restatement second of conflicts, which Hammersmith goes through in great detail and points out the need for uniformity, which was another issue not even discussed in American Bridge. And that need for uniformity comes through very strongly in the restatement of conflicts as adopted by and expanded upon by Hammersmith. We don't want a case like this, where you have a contractor insured who does business in 40 states to have the risk of having to deal with 40 different states' laws in terms of what is an occurrence. And is it going to be decided differently in South Carolina than it is in Pennsylvania? How do you do that? Well, your arguments are good ones, but nonetheless, we still have this American Contract Bridge case, which... But it's distinguishable. It's, again, not the same... Just because of the type of policy? No, not just because of that. It's part of it. The other part is we don't know what the issue was that was supposedly in conflict. And indeed, maybe it was the same. You know, if it's what they call in Hammersmith a false conflict, maybe Tennessee law and Pennsylvania law, in effect, were the same, one and the same. The courts in American Bridge would not have to expound the great length upon the differences between the two. And maybe it just said, look, we just want to apply Pennsylvania law. We don't see a material difference between that and Tennessee law. But there's no discussion. So you don't have to overrule American Bridge. You can just simply say that the record in this case was much better developed. And we deal with an analysis of the restatement second of conflicts. And this is the proper decision. This is the way to go. It's an evolving standard. It's not an inconsistent standard that's being applied in Hammersmith versus American Bridge. It is simply distinguishable. And you don't have to get beyond that point. Caverna was decided... This is a little off the point, but Caverna was decided a few years ago. Has that standard policy been revised? The standard policy? The standard insurance policy? No, sir. I mean, there's nothing, Judge Lurie, that would stop the parties, either party, from asking for a choice of law. There's a big hole in coverage. No, Caverna has been expanded by later cases. Gambone takes Caverna, which was restricted to damage just to the product that was built by the insured, some kind of furnace in a steel plant, I believe. And Gambone is after American Contract Bridge. Yes. It's after American Contract Bridge. It's after Caverna. It extends Caverna and is very persuasive. Now, I recognize that if Alcotter is denied, that doesn't mean that the Supreme Court of Pennsylvania gives its blessing to Gambone. However, you can't ignore the fact that the Supreme Court of Pennsylvania, if it felt that Gambone went too far in extending Caverna, could have granted Alcotter. They did not. I can't do anything more than that other than to say that was a very recent development. So the South Carolina precedents and New Hampshire precedents that specialty services is urging upon the court, if there were merit to that, the Supreme Court of Pennsylvania could very well have taken Alcottor in Gambone. And it chose not to. And this court, in terms of Gambone being a superior court case, you're not bound by it. You're not free to just say, oh, this must be Pennsylvania law. But if you find it reasonably well written and decided, that you can ignore it only if you find that there is persuasive data. And I think that's the language in the courts. We have decided in a subsequent case that Gambone is the Pennsylvania law. In the CPB case, the Third Circuit cited at length Gambone. So obviously that panel thought that Gambone was persuasive and the proper authority. And then in CPB, even though there was no negligence count in that case, nevertheless, it went the next step and said, if there is harm suffered by a third party in that case, Rexall, who received the defective chondroitin and then mixed it with their own product and suffered a harm. The court applied the Kverner and Gambone rationales to say that there is no occurrence. And indeed, had the parties, the underlying case in CPB, had Rexall done what Shasta did in an effort to try to get insurance coverage and filed an amended complaint and included a negligence count, which would do nothing more than say everything we say that you did, which constitutes a breach of contract, also was negligent. That's where you would then get into the gist of the action rationale and say, well, wait a second. Can they simply convert a breach of warranty, breach of contract count, or not convert, but add to it a negligence count and simply by using the word negligence create coverage? No. And the wrong product that the other side keeps on talking about, and I believe, Judge Laura, you said that, you know, you pointed out quite properly that you can't look to an amicus brief as part of the record. And indeed, Kverner makes it very clear, and other Pennsylvania cases make it very clear, when you're talking about coverage, you look at the underlying complaint, you look at the insurance policy. If you can find coverage based on the four corners of those two documents, fine. If you can't, then you don't have coverage. They're relying on a topic about a wrong product, and that language does not appear in the original Shasta complaint or in the second amended complaint filed by Shasta. It shows up in an amicus brief. And it's not a wrong product that was... Counselor, you're about done. You better wrap up. The last point I just want to make is there is no fortuitous event anywhere in this case. Even the wrong product was just the case of picking a different system than specified, but with the understanding of the parties. It may have turned out not to be a good product to use. That's not a fortuitous event. Thank you, Counselor. Thank you, Your Honor. In rebuttal, I'd like to address the Pennsylvania occurrence issue. In particular, you know, Coverner, and what Coverner did and what it didn't do. Coverner cited L.J. Inc. from the South Carolina Supreme Court as instructive to its analysis and relied heavily on that case. And quoting from Coverner, the Supreme Court said, the court referring to the South Carolina Supreme Court in L.J., stated that a CGL policy may provide coverage where faulty workmanship caused bodily injury or damage to another property, but not in cases where faulty workmanship damages the work product alone. There's no dispute here that Sprint Turf's work was to lay the turf and to install the airfield liner. There's no dispute that there was a problem with the airfield liner that damaged the base that was supplied by Trent. There's no dispute that Sprint Turf had nothing whatsoever to do with the base. So that distinguishes our case from what was decided in Coverner. But how about Gambone? And how about the fact that in PGB or whatever it was, we said Gambone was what we predicted the Supreme Court of Pennsylvania would decide. Yes, Your Honor. Gambone was a general contractor who built a house and there was no damage beyond the house. So that's distinguishable from this case as well. On the Coverner distinction between is it damage to your product alone or damage to something else, in Gambone it was damage only to the house, only to Gambone's product. Here there's damage beyond Sprint Turf's product and that's the distinction. So when you dig deep into Coverner, you find that that's the distinction adopted by the New Hampshire Supreme Court and the South Carolina Supreme Court. We're going to run out of time here. Let's go back to American Contract Bridge. It's a rather interesting situation from a stare decisis point of view because the court in these situations is not talking about law that it is free itself to make. In both of these cases, in American Contract Bridge, as in Hammersmith, the court was saying what would the Supreme Court of Pennsylvania decide if they had this case? Now, it strikes me that there's 22 years of Pennsylvania Superior Court law between American Bridge, Contract Bridge, and Hammersmith, and 24 years of that law between Gambone and American Bridge. And Hammermesh cited a whole bunch of McCabe and Hughes, all these Pennsylvania cases that said what we're interested here in looking at is the significant relationships with the contract of insurance so that we can fulfill the expectations of the parties and not to the significant relationships with the tort and the injury. Now, can't American Bridge be distinguished on the ground that between Hammermesh and Gambone and American Bridge – that's right, I'm sorry, Hammersmith – there was all this law, Pennsylvania Superior Court law, that was relied upon in Hammersmith that leads to a different conclusion as to what the Pennsylvania Supreme Court would decide. In other words, we have data relevant to what the Supreme Court would apply that American Contract Bridge did not have. Yes, Your Honor. There is no intervening law in state court in Pennsylvania that would affect American Contract Bridge League. Hammersmith itself cited American Contract Bridge League favorably in a footnote. And, you know, certainly the court does look to the contract of insurance and the connection of the contract of insurance to the dispute. And the cite from Griffiths, which is the Pennsylvania Supreme Court case that's relied on most heavily, you know, both by American Contract Bridge League and Hammersmith, says what you need to do is look to the issues in dispute in the particular litigation and the connection of the states to that issue. Here the issue is duty to defend as opposed to notice. And that's the distinction between American Contract Bridge League and Hammersmith. The issue here isn't what occurrence means. Well, it ends up being what occurrence means because that's how the court said it was no duty to defend. But if you look, if Your Honor looks at the complaint that was filed and the answer and the counterclaims, it's perfectly clear that the issues were about the nitty-gritty of the duty to defend and what was owed in the defense. Okay. Thank you. Thank you, counsel. Thank you, Your Honor. Excellent job on the briefs and on oral argument, counsel. And we'll take the case under advisement. Thank you.